An order in accordance with this opinion will this day be issued.

**UNITED STATES of America**

v.

**James H. MEANS.**

**Crim. No. J80–00037(R).**

United States District Court, S.D. Mississippi, Jackson Division.

Aug. 29, 1988.

James B. Tucker, Asst. U.S. Atty., Jackson, Miss., for U.S.

Earl Keyes, Jackson, Miss., for James H. Means.

## MEMORANDUM OPINION

DAN M. RUSSELL, Jr., District Judge.

The defendant, James H. Means, with his co-defendant, Edgar H. Lloyd, Jr., was

named in a three-count indictment, Count I charging a violation of 18 U.S.C. §§ 1341, 1342 (mail fraud) and Counts II and III charging violations of 18 U.S.C. §§ 1343, 1342 (fraud by wire). The defendant was convicted on September 11, 1981. On appeal the defendant's conviction was affirmed. *United States v. Means*, 695 F.2d 811 (5th Cir.1983). Pursuant to the Order of this Court, the defendant paid a $3,000.00 fine and served a sentence of sixteen (16) months confinement and five (5) years probation. The defendant is now before this Court on Motion to Set Aside Judgment, and in support thereof argues that pursuant to *McNally v. United States*, —— U.S. ——, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), his conviction should be set aside and retroactively vacated. Based upon the findings and conclusions set forth below, this Court is of the opinion that the motion to set aside the judgment is not well taken and should be denied.

### I. McNALLY

In *McNally*, the United States Supreme Court was faced with a situation wherein public officials and a private individual from the Commonwealth of Kentucky were charged and convicted with violating section 1341 [1] by devising a scheme to defraud Kentucky's citizens and government of certain "intangible rights," such as the right to have Kentucky's affairs conducted honestly, and for obtaining money by means of false pretenses and concealing material facts. In examining the facts before it, the Supreme Court noted "[T]hat as the action comes ... there was no charge and the jury was not required to find that the Commonwealth itself was defrauded of money or property". *Id.*, —— U.S. at ——, 107 S.Ct. at 2882. The Court further stated that "[a]lthough the Government now relies in part on the assertion that the petitioners obtained property by means of false

1. Section 1341 provides in pertinent part:
 Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, ... for the purpose of executing such scheme or artifice or attempting to do so [uses the mails or causes them to be used,] shall be fined not more than $1,000.00 or imprisoned not more than five years, or both. For the purpose of the present motion, the analysis applicable to section 1341 is equally applicable to sections 1342 and 1343; and therefore, no separate reference will be made to sections other than 1341.

representations ... there was nothing in the jury charge that required such a finding." *Id.,* ── U.S. at ──, 107 S.Ct. at 2882. In reversing the Court of Appeals and the District Court, the Supreme Court determined that the mail fraud statute did not apply to schemes to defraud citizens of their intangible right to honest and impartial state government; but rather that section 1341 was limited in scope to the protection of money or property rights. *Id.,* ── U.S. at ──, 107 S.Ct. at 2877.

## II. THE INDICTMENT

The defendant contends that instruction no. 16 [2] given by the Court was an alternative charge to the jury based on one of the Government's theories of guilt by an allegation in the indictment in paragraph 2 of Count I concerning the State of Mississippi's loss of "honest and faithful service."

In response the Government points out that in reviewing the defendant's conviction, the Fifth Circuit opined that the proof presented as to the scheme to defraud both Singing River Bank and First Mississippi Bank of Commerce was "[D]amning evidence of an 'influence-for-pay' scheme" ... and that "[S]ufficient evidence was presented to support an inference by the jury of a scheme by Lloyd and Means to swap their influence for money." *United States v. Means,* 695 F.2d at 816. Furthermore, the Government submits that with respect to Count I of the indictment, it was charged *inter alia* that the defendant engaged in a scheme, "[T]o obtain money and property by means of false and fraudulent pretenses, representations and promises from persons interested in the affairs and business of Singing River Bank and First Mississippi Bank of Commerce." The Government also points out that the basic premise with respect to the illegal conduct of the defendant was set forth in paragraph 4 of Count I of the indictment which basically charged that: through a scheme fraudulently carried out by both defendants, the people with Singing River Bank

and First Mississippi Bank of Commerce paid money in return for the defendant (Means) approving pending applications before the State Department of Bank Supervision.

Although the Government concedes that in paragraph 2 of Count I of the indictment it was alleged that there was a loss of "honest and faithful service" by the State of Mississippi, by the conduct of the defendant, the Government argues that because "honest and faithful service" was only mentioned once in the indictment and prior to so reading, the Court instructed the jury that the indictment was not to be considered as evidence, the statement was of no consequence. This Court agrees. In *United States v. Matt,* 838 F.2d 1356 (5th Cir.1988), the Fifth Circuit, when faced with an almost identical "indictment" issue as in the case *sub judice,* stated that:

> [H]e maintains, the court confused the jury by noting that Matt was accused of a scheme to defraud Brown & Williamson of its money, property and right to the honest services of Matt. By acting on this instruction, the argument runs, the jury may have convicted Matt of failure to provide honest services—an intangible right that *McNally* holds is outside the scope of § 1341.

> This claim has no merit. The district court mentioned 'honest service' once, in the context of reviewing the indictment; and it made clear to the jury that the indictment was not to be considered by the jury as evidence of guilty. In addition, when setting out for the jury what the government had to prove to establish Matt's guilt under § 1341, the Court correctly limited the coverage of the statute to money and property; ...

*Id.* at 1358.

## III. THE INSTRUCTIONS

The primary area of contention surrounding the present motion concerns whether or not the instructions given at the trial of this cause, should now, in light of *McNally,*

**2.** Instruction no. 16, as well as Instructions no. 11 and no. 13, are set forth in full in Appendix "A".

be considered as having permitted the jury to find the defendant guilty on an alternative argument outside the statutory grasp of section 1341. It is the defendant's position that when his case was submitted to the jury for deliberation, the instructions, as given, did not require the jury to find that he had deprived the State of Mississippi -of a money and/or property right in order to convict. In support of this argument, the defendant draws this Court's attention to a part of instruction no. 16, which stated that:

> The prohibitions of the law are not restricted to acts which cheat the State or Federal government out of money or property or result in an actual financial loss to it. Rather, the prohibition includes any obstruction or impairment of a function of a State or Federal governmental agency by deceptive means, craft, trickery, deceit or at least by means that are dishonest.

In response the Government asserts that the instructions given, specifically No. 11 and No. 13 sufficiently set forth that the violations of which findings of guilt were required, were not based upon "intangible rights" but upon findings of fraud and deprivation of money or property rights. The Government emphasizes that instruction no. 11 stated in part that:

> In order to establish that a Defendant is guilty of mail fraud, the Government must prove beyond a reasonable doubt that:
>
> 1. The Defendants, or either of them, willfully and knowingly devised a scheme or artifice to defraud, or for obtaining money or property by means of false pretenses, representations of promises, and
>
> 2. The Defendants, or either of them, used the United States Postal Service by mailing, or by causing to be mailed, some matter or thing for the purpose of executing the scheme to defraud.
>
> \* \* \* \* \* \*
>
> To act with "intent to defraud" means to act knowingly and with the specific intent to deceive, ordinarily for the purpose of causing some financial loss to another or bringing about some financial gain to one's self.

and that instruction no. 13 directed in part that:

> In order to establish that a defendant is guilty of fraud by wire, the government must prove beyond a reasonable doubt that:
>
> 1. The defendants, or either of them, knowingly and willfully devised a scheme or artifice to defraud or for obtaining money or property by means of false pretenses, representations or promises, and
>
> 2. The defendants, or either of them, transmitted or caused to be transmitted, in interstate commerce, any writing, signal or sound for the purpose of executing the scheme.

The Government also points out that an examination of each instruction wherein the Court advised the jury as to the essence of Counts I, II & III, depicted the scheme as one "[t]o obtain money and property by means of false and fraudulent pretenses ... from persons interested in the affairs of ..." Singing River Bank and First Mississippi Bank of Commerce.

## IV. CONCLUSION

 Based upon an examination of the indictment and of each of the instructions granted in the case, the Court is of the opinion that *McNally* does not vitiate the defendant's conviction in this matter. As noted earlier, *McNally* was concerned with a situation where "[T]he jury was not required to find that the Commonwealth itself was defrauded of any money or property." *McNally*, —— U.S. at ——, 107 S.Ct. at 2882. It is the understanding of this Court that the *McNally* rule controls where an indictment fails to allege a money or property loss to a victim and the trial court thereafter fails to instruct the jury that the victim was defrauded of money or property. In the case at bar, the indictment alleged a money and/or property loss, the proof established that the primary victims, Singing River Bank and First Mississippi Bank of Commerce, were defrauded of money and/or property and this Court ade-

quately instructed the jury that they had to find beyond a reasonable doubt as to the money and/or property loss to those victims. *McNally* is simply inapplicable. Furthermore, *assuming arguendo* that this Court's instructions might be construed as permitting an alternative basis for conviction, i.e., that the scheme to defraud as alleged, included the intangible loss of "honest and faithful services", because the jury instructions included a definition of conduct that was an offense under *McNally*, i.e., the loss of money and/or property resulting from the scheme to defraud, then necessarily the conviction would still be valid. *United States v. Wellman*, 830 F.2d 1453, 1462–63 (7th Cir.1987); *United States v. Richerson*, 833 F.2d 1147, 1156–58 (5th Cir.1987).

Therefore, based on the conclusions as set forth above, the Court is of the opinion that the defendant's motion to set aside the judgment is not well taken and should be denied.

## APPENDIX A

### GOVERNMENT'S INSTRUCTION NO. 11

Each of the defendants are charged in Count 1 of the Indictment with having devised and intended to devise a scheme and artifice to defraud the citizens of the State of Mississippi, the Governor of the State, the Attorney General of the State, State governmental agencies, officials and employees, in particular the Office of the State Comptroller and the Department of Bank Supervision, and the officers, directors, employees, stockholders and agents of the Singing River Bank and the First Mississippi Bank of Commerce, and the Federal Deposit Insurance Corporation, and all other persons desiring to engage in the business of banking within the State and the Southern District of Mississippi, and to obtain money and property by means of false and fraudulent pretenses, representations and promises from persons interested in the affairs and business of Singing River Bank and First Mississippi Bank of Commerce. Count I further charges that the defendants LLOYD and MEANS, for the purpose of executing the scheme and artifice to defraud described in Count I and attempting to do so, on or about September 4, 1976, did knowingly cause to be placed in an authorized depository for mail, matter to be sent and delivered by the Postal Service according to the direction thereon from the Singing River Bank to the Southern National Bank, Birmingham, Alabama, a letter and financial statement of defendant LLOYD, all in violation of the laws of the United States, which provide in part that:

"Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises ... for the purpose of executing such scheme or artifice or attempting to do so, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Post Office Department, [shall be guilty of an offense against the laws of the United States.]"

In order to establish that a Defendant is guilty of mail fraud, the Government must prove beyond a reasonable doubt that:

1. The Defendants, or either of them, willfully and knowingly devised a scheme or artifice to defraud, or for obtaining money or property by means of false pretenses, representations or promises, and

2. The Defendants, or either of them, used the United States Postal Service by mailing, or by causing to be mailed, some matter or thing for the purpose of executing the scheme to defraud.

The words "scheme" and "artifice" include any plan or course of action intended to deceive others, and to obtain, by false or fraudulent pretenses, representations, or promises, money or property from persons so deceived.

A statement or representation is "false" or "fraudulent" within the meaning of this statute if it relates to a material fact and is known to be untrue or is made with reckless indifference as to its truth or falsity, and is made or caused to be made with

intent to defraud. A statement of representation may also be "false" or "fraudulent" when it constitutes a half truth, or effectively conceals a material fact, with intent to defraud. A "material fact" is a fact that would be important to a reasonable person in deciding whether to engage or -not engage in a particular transaction.

To act with "intent to defraud" means to act knowingly and with the specific intent to deceive, ordinarily for the purpose of causing some financial loss to another or bringing about some financial gain to one's self.

It is not necessary that the Government prove all of the details alleged in the indictment concerning the precise nature and purpose of the scheme; or that the material mailed was itself false or fraudulent; or that the alleged scheme actually succeeded in defrauding anyone; or that the use of the mail was intended as the specific or exclusive means of accomplishing the alleged fraud.

What must be proved beyond a reasonable doubt is that the accused knowingly and willfully devised or intended to devise a scheme to defraud substantially the same as the one alleged in the indictment; and that the use of the U.S. mail was closely related to the scheme in that the accused either mailed something or cause it to be mailed in an attempt to execute or carry out the scheme. To "cause" the mails to be used is to do an act with knowledge that the use of the mails will follow in the ordinary course of business or where such use can reasonably be foreseen.

\* \* \* \* \* \*

## GOVERNMENT'S
## INSTRUCTION NO. 13

Count 2 of the indictment charges both defendants with having devised and intended to devise the same scheme and artifice to defraud, and attempting to do so, and to obtain money and property by means of false and fraudulent pretenses, representations and promises, as described in Count 1, and in furtherance of that scheme and artifice to defraud, with having knowingly caused to be transmitted certain signs, signals and sounds in interstate commerce, i.e., a conversation by means of the telephone, between an employee and director of Singing River Bank in the State of Mississippi and an employee of the Southern National Bank in the State of Alabama, in violation of the laws of the United States.

Similarly, Count 3 charges both defendants with having devised and intended to devise the same scheme and artifice to defraud, and attempting to do so, and to obtain money and property by means of false and fraudulent pretenses, representations of promises, against as described in Count 1 of the indictment, and in furtherance of that scheme and artifice to defraud, with having knowingly transmitted and cause to be transmitted certain writings, signs, signals and sounds in interstate commerce, by means of a wire communication, that is, a wire transfer of funds in the amount of $60,855.30 from the Hancock Bank, Gulfport, Mississippi, for the benefit of the Singing River Bank, in the State of Mississippi, to the Southern National Bank in the State of Alabama, in violation of the laws of the United States.

Both Counts 2 and 3 charge a violation of the same law of the United States, which provides in part that:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, or any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be [guilty of an offense against the laws of the United States.]

In order to establish that a defendant is guilty of fraud by wire, the government must prove beyond a reasonable doubt that:

1. The defendants, or either of them, knowingly and willfully devised a scheme or artifice to defraud or for obtaining money or property by means of false pretenses, representations or promises, and

2. The defendant, or either of them, transmitted or caused to be transmitted, in interstate commerce, any writing, signal or sound for the purpose of executing the scheme.

\* \* \* \* \* \*

### GOVERNMENT'S INSTRUCTION NO. 16

As I have previously explained, all three of the counts of this indictment charge the defendants with a scheme and artifice to defraud the citizens, various governmental agencies and banking institutions. The term defraud has a broad definition, which includes the prohibition of any act or acts which have as their purpose and would have the effect of impairing, obstructing or defeating the lawful functions of any department or agency of the state or federal government. The prohibitions of the law are not restricted to acts which cheat the state or federal government out of money or property or result in an actual financial loss to it. Rather, the prohibition includes any obstruction or impairment of a function of a state or federal governmental agency by deceptive means, craft, trickery, deceit or at least by means that are dishonest.

See also, 695 F.Supp. 314.